United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

                                Case No. 2:24-CR-20532

v.

                                Hon. Susan K. DeClercq

William A. Smith,

        Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, William A. Smith, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1.    Counts of Conviction

The defendant will waive his right to an indictment and will plead guilty to Counts 1 and 2 of the Information. Count 1 charges the defendant with wire fraud in violation of 18 U.S.C. § 1343. Count 2 charges the defendant with laundering of monetary instruments in violation of 18 U.S.C. § 1956 (a)(1)(B)(i).

2.      **Statutory Maximum Penalties**

The defendant understands that the counts to which he is pleading guilty carry the following maximum statutory penalties:

| | | |
|---|---|---|
| **Count 1** | Term of imprisonment | Twenty years |
| | Fine: | $250,000, or twice pecuniary gain/loss |
| | Term of supervised release: | Three years |
| **Count 2** | Term of imprisonment | Twenty years |
| | Fine: | $500,000 or twice the value of the property involved in the money laundering transaction |
| | Term of supervised release: | Three years |

3.      **Elements of Counts of Conviction**

The elements of Count 1 are:

First, the defendant knowingly devised or participated in a scheme to defraud in order to deprive others of money or property;

Second, the scheme included a material misrepresentation or concealment of a material fact;

Third, the defendant had the intent to defraud;

Fourth, the defendant used or caused others to use wire communications in interstate commerce in furtherance of the scheme.

The elements of Count 2 are:

First, the defendant knowingly conducted a financial transaction;

Second, some or all of the property involved in the financial transaction was proceeds of wire fraud;

Third, the defendant knew that the property involved in the financial transaction represented proceeds of some form of unlawful activity;

Fourth, the defendant knew the financial transaction was designed in whole or in part to disguise the nature, location, source, ownership, or control of the proceeds of wire fraud.

**4.    Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional charges against the defendant for the conduct reflected in the factual basis of this agreement.

5.   **Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

William A. Smith was employed as the Chief Financial Officer for the Detroit Riverfront Conservancy, Inc. (the Conservancy) from 2011 through May 2024.  The Conservancy is a 501(c)(3) organization formed with the mission of developing access to the Detroit riverfront. The Conservancy envisions creation of a continuous Riverwalk from the Ambassador Bridge in the west to Gabriel Richard Park in the east, along with plazas, pavilions, and green spaces.  Funding for the Conservancy is provided by both private donors and public grants. In his position as Chief Financial Officer of the Conservancy, Smith enjoyed substantial discretion in overseeing and managing the Conservancy's financial affairs.

Beginning no later than November 2012 and continuing through May 2024, William A. Smith engaged in a scheme to defraud the Conservancy by systematically embezzling the Conservancy's funds and using them for his own purposes.

Smith's fraud scheme took three principal forms:

- **First**, Smith diverted Conservancy funds from the organization's bank accounts to a bank account in the name of "The Joseph Group, Inc.," an entity owned and controlled by Smith. The Joseph Group was not an approved vendor for the Conservancy and provided no goods or services of any kind to the organization. However, between February 2013 and May 2024, Smith transferred approximately $24.4 million from the Conservancy's bank accounts to an account in the name of the Joseph Group.

- **Second**, Smith maintained an American Express account in the name of another of the many entities he owned and controlled, this one called "William Smith & Associates LLC." There were four American Express credit cards issued on this account. Between November 2012 and May 2024, Smith used approximately $14.9 million in Conservancy funds to pay off purchases made on this account. None of these expenditures were authorized by the Conservancy, which maintained other credit card accounts

for Conservancy purchases. Smith used the American
Express account to purchase furniture, designer clothing,
handbags, lawn care services, airline tickets, and other
consumer goods and services for himself and his family.

- **Third**, Smith used Conservancy funds to purchase cashier's
checks from various financial institutions. These cashier
check purchases were unauthorized, and Smith used the
cashier's checks for his own purposes without the knowledge
or approval of the Conservancy's Board of Directors.

Smith engaged in various practices to cover up his long-running
fraud scheme, thereby enabling it to continue. In some instances, he
falsified bank statements that he provided to the Conservancy's
bookkeeper, altering or deleting unauthorized transfers on the
statements in order to keep them off of the Conservancy's books. In at
least one other instance, he took out a line of credit with a financial
institution (Citizen's Bank) on behalf of the Conservancy. Smith
claimed to be acting with the authorization of the Conservancy's Board
of Directors in taking out this line of credit. In fact, Smith had no such
authority, and the documents he provided Citizen's Bank purporting to

show that he had such authorization were forgeries. Smith used the funds from this line of credit (which eventually totaled $5 million) to infuse monies into the Conservancy's bank accounts to help cover up his substantial embezzlement from those accounts.

In executing his scheme, Smith made regular use of interstate wire communications. For instance, Smith routinely made electronic payments from the Conservancy's Comerica bank account to pay his American Express charges. Because Smith authorized electronic payments online from locations in Michigan, transferring funds to American Express which has its payment processing facilities in California, each of these payments necessarily entailed the use of interstate wire communications.

After embezzling funds from the Conservancy, Smith also took complex steps to conceal the source and nature of the embezzled funds. An example of this can be found in Smith's movement of money in September 2021 in advance of his purchase of a home in Texas. On September 24, 2021, Smith wired $98,600 from the Conservancy's account at Comerica Bank to the Joseph Group's account at Bank of America, one of the many unauthorized transfers of Conservancy funds

Smith made to that entity. The same day, Smith transferred $65,000 from the Joseph Group's account into another Bank of America account held by "First Round Management," another Smith-controlled entity. Three days later, Smith transferred another $33,000 from the Joseph Group's account to the First Round Management account. On that same day, Smith transferred funds from the First Round Management account to a bank account at JP Morgan Chase in the name of "YBE Food Group," yet another Smith-controlled entity. YBE Food Group maintained two accounts at JP Morgan Chase. Funds from the YBE Food Group account that received the transfers from First Round Management were later transferred to the other YBE Food Group account. Smith then transferred funds from that second YBE Food Group account to his personal bank account, which was also maintained at JP Morgan Chase. The funds transferred from the YBE Food Group account to Smith's personal bank account were among the funds Smith used to purchase a cashier's check on September 27, 2021 in the amount of $429,034.62. Smith used that cashier's check to purchase a residence – in cash -- in Cypress, Texas in October 2021. The elaborate financial transactions described above – beginning with the transfer of embezzled

funds from Smith's Joseph Group account to his First Round Management account – were all intended to conceal the source and nature of the Conservancy funds Smith embezzled.

The losses Smith caused to the Conservancy are difficult to quantify with precision, but can be conservatively estimated as between $40 million and $65 million. As part of the scheme to defraud, Smith personally derived more than $1 million in gross receipts from one or more financial institutions.

**6.    Advice of Rights**

The defendant has read the Information, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.    The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.     The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.     The right to confront and cross-examine adverse witnesses at trial;

F.     The right to testify or not to testify at trial, whichever the defendant chooses;

G.     If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H.     The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I.     The right to compel the attendance of witnesses at trial.

**7.     Collateral Consequences of Conviction**

The defendant understands that his conviction may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Page **10** of **26**

The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his convictions.

8.     **Defendant's Guideline Range**

   A.     **Court's Determination**

   The Court will determine the defendant's guideline range at sentencing.

   B.     **Acceptance of Responsibility**

   The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded

the two-level reduction under USSG § 3E1.1(a), the government

recommends that the defendant receive an additional one-level

reduction for acceptance of responsibility under USSG § 3E1.1(b). If,

however, the government learns that the defendant has engaged in any

conduct inconsistent with acceptance of responsibility—including, but

not limited to, making any false statement to, or withholding

information from, his probation officer; obstructing justice in any way;

denying his guilt on the offense to which he is pleading guilty;

committing additional crimes after pleading guilty; or otherwise

demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under

this paragraph, will be free to argue that the defendant not receive *any*

reduction for acceptance of responsibility under USSG § 3E1.1, and will

be free to argue that the defendant receive an enhancement for

obstruction of justice under USSG § 3C1.1.

### C.    Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal

Procedure 11(c)(1)(B) that the following guideline provisions apply to

the defendant's guideline calculation:

Section 2B1.1(a)(2): Base offense level of seven;

Section 2B1.1(b)(1)(L): Loss between $25,000,000 and $65,000,000 (add

22 levels);

Section 2B1.1(b)(9)(A): Offense involved a misrepresentation that

defendant was acting on behalf of a charitable organization (add two

levels);

Section 2B1.1(b)(17)(A): Defendant derived more than $1,000,000 from

a financial institution as a result of the offense (add two levels);

Section 2S1.1(b)(2)(B): Conviction under 18 U.S.C. § 1956 (add two

levels);

Section 2S1.1(b)(3): Sophisticated laundering (add two levels);

Section 3B1.3: Abuse of position of trust (add two levels).

The parties have no other joint recommendations as to the

defendant's guideline calculation. The parties are free to argue that

other guideline provisions apply to the defendant's guideline

calculation, so long as those provisions are not inconsistent with any of

the joint recommendations set forth in this paragraph.

### D.    Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing purposes.

### E.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.    Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B or 8.C. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

9.    **Imposition of Sentence**

   A.    **Court's Obligation**

The defendant understands that in determining his sentence, the

Court must calculate the applicable guideline range at sentencing and

must consider that range, any possible departures under the sentencing

guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and

apply any applicable mandatory minimums.

   B.    **Imprisonment**

      1.    **Recommendation**

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the

government recommends that the defendant's sentence of imprisonment

not exceed the midpoint of the guideline range determined by the Court

or 235 months, whichever is greater.

      2.    **No Right to Withdraw**

The government's recommendation in paragraph 9.B.1 is not

binding on the Court. The defendant understands that he will have no

right to withdraw from this agreement or withdraw his guilty plea if the

Court decides not to follow the government's recommendation. The

government likewise has no right to withdraw from this agreement if

the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.    Supervised Release

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a three-year term of supervised release.

#### 2.    No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's agreement concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

**D.   Fines**

There is no recommendation or agreement as to a fine.

**E.   Restitution**

The court must order restitution for the full amount of the loss

sustained by the victim. Notwithstanding the offense of conviction, the

parties have agreed the Defendant shall pay restitution in the amount

of at least $44.3 million.

The defendant agrees that restitution is due and payable

immediately after the judgment is entered and is subject to immediate

enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and

3613. If the Court imposes a schedule of payments, the defendant

agrees that the schedule of payments is a schedule of the minimum

payment due, and that the payment schedule does not prohibit or limit

the methods by which the United States may immediately enforce the

judgment in full.

The defendant agrees to make a full presentence disclosure of

his financial status to the United States Attorney's Office by completing

and signing a Financial Disclosure Form and the accompanying

releases for the purpose of determining his ability to pay restitution.

The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant also agrees to participate in a presentence debtor's examination.

### F.    Forfeiture

Pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461, and 18 U.S.C. § 982(a)(1), the defendant agrees to forfeit to the United States any and all property, real or personal, which constitutes proceeds obtained or derived, directly or indirectly, from the defendant's violation of 18 U.S.C. § 1343 as charged in Count 1 of the Information; and any property, real or personal, involved in his violation of 18 U.S.C. § 1956 as charged in Count 2 of the Information, or any property traceable to such property.

The defendant also agrees, pursuant to Fed.R.Crim.P.32.2, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, and 18 U.S.C. § 982(a)(1), to the entry of a personal forfeiture money judgment against him in favor of the United States in the amount of at least $ 44,300,000.00 (or more if warranted by the evidence), which represents an approximation of the total amount of proceeds the defendant obtained or derived, directly or

indirectly, from his violations of 18 U.S.C. §§ 1343 and 1956. This amount will be reduced by the amount of any specific forfeitures that become final, once third parties have had an opportunity to claim the assets in the process dictated by 21 U.S.C. § 853(n).

The defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of the defendant. To satisfy the money judgment, the defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture with specific assets listed—containing the above referenced forfeiture of proceeds, property involved in money laundering, the forfeiture money judgment, and substitute assets—upon application by the United States at, or any time before, his sentencing in this case. The defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by

the government.  The defendant agrees that the forfeiture order will be final and effective as to him upon entry by the Court.

The defendant agrees to complete and return a Financial Disclosure Form within three weeks of receiving it from government counsel, which may be used in any lawful manner to collect the money judgment amount and/or restitution, and which may be disclosed to any agencies or personnel of the government for that purpose.  The financial statement shall disclose and list all assets, funds and property of any kind in which the defendant has an interest, all liens and encumbrances against such assets, funds and property, and all of the defendant's liabilities. The financial statement must be signed by the defendant under penalty of perjury.

The defendant will continue to cooperate with the government as requested by the government in connection with the government's efforts to identify, locate, seize, and forfeit property that is subject to forfeiture under this agreement.  The defendant agrees that he will continue to cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, property that is forfeitable to the United States under this agreement and will execute

such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.  If any other person or entity has any interest in such property—including the Joseph Group & Associates LLC, William Smith & Associates LLC, First Round Management LLC, Bleu Rose Investments LLC, Biltmore Development Group, LLC, Biltmore Records LLC, the YBE Group LLC, YBE Investments LLC, YBE Food Group LLC, YBE Property Group LLC, YBE Services Group LLC, YBE Tobacco Group, LLC, Alter Ego Properties LLC, Biltmore Publishing Group, LLC, Biltmore Entertainment Group, LLC, 48235 Properties, LLC, Ross Drive, LLC—the defendant will provide the government with the name and address of the person or entity that has an interest in, and/or possession of, the asset, and assist the government in obtaining a release of interest from any such other person or entity.

The defendant waives his right to have a jury determine the forfeitability of his interest in the above identified property as provided by Rule 32.2(b)(5) of the Federal Rules of Criminal Procedure.

The defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant acknowledges that he understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure and/or forfeiture of property covered by this Plea Agreement, and the restraint of property in the related civil case, *United States v. William Anthony Smith*, 24-cv-11626.

The defendant knowingly, voluntarily, and intelligently waives any statutory and constitutional challenge to the above-described forfeiture including any challenge based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

### G.    Special Assessment

The defendant understands that he will be required to pay a special assessment of $200, due immediately upon sentencing.

## 10.    Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the midpoint of the guideline range determined by the Court or 235 months, whichever is greater, the defendant also waives any right he may have to appeal his sentence on any grounds.

## 11.    Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C.

§ 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**12.    Consequences of Withdrawal of Guilty Plea or Vacation of Judgment**

If the defendant is allowed to withdraw his guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**13.    Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any

Page **24** of **26**

statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

### 14.   Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

### 15.   Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions

against the defendant, or any forfeiture claim against any property, by the United States or any other party.

Dawn N. Ison
United States Attorney

_____
John K. Neal
Chief, Public Corruption and
Civil Rights
Assistant United States
Attorney

_____
Robert A. Moran
Assistant United States
Attorney

Dated: 10/25/2024

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____
Gerald Evelyn
Attorney for Defendant

_____
William A. Smith
Defendant

Page **26** of **26**