UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case Nos. 2:24-cr-20532;
2:25-mc-50559; 2:26-mc-12917

v.

Honorable Susan K. DeClercq
United States District Judge

WILLIAM A. SMITH,

Defendant.
______________________________/

**OPINION AND ORDER PERMITTING ATTORNEY GERALD K. EVELYN TO FILE A PETITION FOR OUTSTANDING ATTORNEY'S FEES INCURRED BETWEEN APRIL 24, 2024, AND SEPTEMBER 24, 2024**

Before this Court is a difficult question of whether a defense attorney can seek attorney's fees from untainted, forfeitable funds after the defendant has been sentenced, but where specific exception language about attorney's fees was included in the judgment. After consideration of the Parties' arguments and careful review of the relevant law, this Court will allow attorney Gerald K. Evelyn to file a petition for reasonable attorney's fees as specified below.

## I. BACKGROUND

### A. Initial Criminal Proceedings and Civil Injunctive Action

From 2011 to 2024, Defendant William A. Smith was the Chief Financial Officer (CFO) of the Detroit Riverfront Conservancy, Inc. (DRC), a nonprofit

corporation "funded by both public grants and private donations" to develop Detroit's "riverfront into a safe and accessible gathering place for the community's residents and visitors." *United States v. Smith*, No. 2:24-cr-20532 (E.D. Mich. 2024) ("*Smith I*"), ECF Nos. 14 at PageID.50; 1 at PageID.3. In May 2024, the DRC fired Smith and the Federal Bureau of Investigation (FBI) executed a search warrant on Smith's DRC office, suspecting that Smith had been defrauding the DRC of millions of dollars. *Smith I*, ECF No. 1 at PageID.3, 7.

In June 2024, Smith was arrested. *Smith I*, ECF No. 11. By then, Smith had obtained his own counsel, Gerald Evelyn.[1] *See Smith I*, ECF Nos. 6; 71. Specifically, Smith signed an attorney-client retainer agreement (the "Retainer Agreement") on April 24, 2024, hiring Evelyn to be Smith's "representation . . . in a pending criminal investigation regarding [his] employment." *Smith I*, ECF No. 71 at PageID.675. The Retainer Agreement provided that if Smith was "charged following the investigation, [Evelyn] and [Smith] will enter into a new Retainer Agreement." *Id.* In the Retainer Agreement, Smith agreed to pay Evelyn a $50,000 retainer and fees for his services rendered at an hourly rate of $400. *Id.* The Retainer Agreement also stated Evelyn would bill Smith "on a periodic basis." *Id.*

[1] Smith later hired a second attorney, Robert Higbee. *Smith I*, ECF No. 21. However, Smith and Higbee did not have any written agreement discussing representation and fees. For the reasons explained below, this Court finds that Higbee has no legal interest in the forfeited assets. Accordingly, this Court focuses solely on Evelyn's right to fees as defense counsel for purposes of resolving this matter.

Also in June 2024, the Government initiated a civil action against Smith for injunctive relief under 18 U.S.C. § 1345(a)(2), seeking a temporary restraining order to prevent Smith from actively selling or "hiding" assets obtained through defrauding the DRC. *United States v. Smith*, No. 2:24-cv-11626 (E.D. Mich. 2024) ("*Smith II*"), ECF Nos. 1; 3 at PageID.49. The Government estimated that Smith had defrauded the DRC out of $39.3 million, so this Court entered an order restraining Smith's assets—including those of his corporate entities—up to a total value of $39.3 million dollars. *Smith II*, ECF No. 5 at PageID.368–69. In that preliminary injunction freezing Smith's assets (the "PI Freeze Order"), this Court excepted from the freeze "funds necessary and reasonable to pay Smith's counsel of choice in his criminal case." *Id.* at PageID.376.

On September 24, 2024, Smith was charged with one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of laundering of monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i). *Smith I*, ECF No. 14 at PageID.52, 55. In the indictment, the Government alleged that upon conviction, any of Smith's property that was "traceable to the offense(s)" would be forfeited pursuant to 18 U.S.C. §§ 981–82. *Id.* at PageID.56. Further, if any such property were not accessible because of Smith transferring, selling, moving, diminishing, hiding, or "comingl[ing] with other property that cannot be divided without difficulty," the Government alleged that it would be entitled to forfeiture of substitute property

under 28 U.S.C. § 2461. *Id.* at PageID.57. The Government also sought a money judgment upon conviction, under which Smith would be required to pay "a sum of money equal to the total amount of proceeds" he unlawfully obtained. *Id.* at PageID.56–57.

Although Smith was charged following the investigation, Evelyn continued representing Smith without entering into a new retainer agreement. *See, e.g.*, *Smith I*, ECF No. 67 (being notified to appear at a status conference on August 4, 2026, at which Evelyn confirmed that he continued representing Smith without securing a second, signed fee agreement).

**B. Plea Agreement and Preliminary Order of Forfeiture**

In November 2024, Smith entered a plea agreement in which he pleaded guilty to both counts. *Smith I*, ECF No. 22. Smith further agreed to the money judgment and asset forfeiture. *Id.* at PageID.86–90, 93–94. This Court accepted Smith's plea and took the agreement under advisement. *Smith I*, ECF No. 43 at PageID.496. Then in January 2025, the Parties stipulated to extend the PI Freeze Order,[2] which still excepted potential attorney's fees. *Smith II*, ECF No. 25 at PageID.527.

In February 2025, the Government applied for an entry of a preliminary order of forfeiture of Smith's assets, including all funds in two retirement accounts: the

---

[2] By this time, the PI Freeze Order had already been extended several times by stipulation of the Parties. *Smith II*, ECF Nos. 10; 11; 21; 24.

Capital Group Detroit River Conservancy 401K Account and the 401K Account for William Anthony Smith at Paychex, Inc. *Smith I*, ECF No. 24. Smith consented to the order in all aspects except as to these retirement accounts, arguing that those funds were untainted and "should be subject to distributions consistent with the recognized exceptions in the" PI Freeze Order. *Smith I*, ECF No. 30 at PageID.239. Smith proposed that the issue of attorney's fees proceed "under seal" with "an *ex parte* hearing with only Mr. Smith's counsel present" because "the Government should not be privy to Mr. Smith's attorneys' bills, work product or otherwise privileged information." *Id.* at PageID.240.

The Government replied that this Court should deny the request for sealed, *ex parte* proceedings "to decide a hypothetical motion for payment of attorney fees" because the request did not comply with sealing procedures and otherwise did not overcome the presumption in favor of open court records. *Smith I*, ECF No. 31 at PageID.243–46. The Government also requested that this Court accept a stipulated preliminary order of forfeiture that would table the attorney's fees issue and not delay sentencing. *Id.* at PageID.244–45.

This Court accepted the stipulated order of forfeiture and ordered a forfeiture money judgment in the amount of $45,512,158.59 against Smith and in favor of the Government, the satisfaction of which could be through tainted assets and untainted assets as substitutes under 21 U.S.C. § 853(p)(2). *Smith I*, ECF No. 32 at

PageID.251. The list of forfeited assets included the two retirement accounts, *id.* at PageID.253, but this Court clarified "that forfeiture of the [retirement funds] will be subject to the Court's decision regarding payment of attorney fees," *id.* at PageID.265. This Court further elaborated:

> These Retirement Funds are subject to ongoing briefing, and the Court has not yet decided whether to permit Mr. Smith to use these funds to pay his attorneys, which is a recognized exception in [*Smith II*], where the Court entered a Stipulated Preliminary Injunction Extending the Asset Freeze, but the parties agreed that [the Retirement Funds] might be subject to distribution for attorney's fees for Defendant's counsel of choice in this matter. But apart from that dispute, the Government has met the requirements to forfeit the Retirement Funds as substitute property in satisfaction of the forfeiture money judgment . . . . Accordingly, as to these funds the Court issues only a general order of forfeiture as to the Retirement Funds under Rule 32.2.(e)(1), identifying the specific amount of funds to be forfeited from the Retirement Funds in satisfaction of the forfeiture money judgment, when a decision on attorney fees is rendered.
>
> [] Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A), this Preliminary Order of Forfeiture shall become final as to [Smith] at sentencing (except as to the Retirement Funds—for which this order becomes final as to a specific amount of funds only after the court's resolution of the attorney fee issue), and the forfeiture of the Subject Property and entry of the forfeiture money judgment shall be made part of [Smith's] sentence and shall be included in his Judgment.

*Id.* at PageID.266 (citations omitted).

**C. Judgment**

On April 24, 2025, this Court entered judgment against Smith, sentencing him to concurrent terms of 288 months' imprisonment for each count and ordering him to pay restitution pursuant to "18 U.S.C. §§ 3663 and 3663A or any other statute

authorizing a sentence of restitution." *Smith I*, ECF No. 36 at PageID.392–93. Smith was ordered to pay restitution of over $43 million to the DRC and $5 million to Citizens Bank, NA. *Id.* at PageID.396. The judgment included a list of property in which "any right title or interest of [Smith] is forever extinguished," pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c). *Id.* at PageID.398–405.

The two retirement accounts were included on the list of forfeited property but marked with asterisks. *Smith I*, ECF No. 36 at PageID.398. This Court noted that the "[p]recise amount to be forfeited [for the asterisked assets was] to be finalized at a later date per [the] Stipulated Preliminary Order of Forfeiture." *Id.* at PageID.406. This Court incorporated the stipulated preliminary order of forfeiture into the judgment. *Id.*

**D. Post-Judgment Proceedings**

In June 2025, the Parties met for a status conference to discuss attorney's fees. *See Smith I*, ECF No. 42. At the conference, the Government stated that Evelyn could no longer use the retirement accounts to pay his fees because Smith had been sentenced. The Government noted that Evelyn could have accessed the funds before sentencing on a motion, but now he faced post-judgment bars of forfeiture and garnishment. Ultimately, the Government argued that the retirement funds should be forfeited entirely or otherwise subject to garnishment.

Evelyn said that he intended to file a motion for the attorney's fees, but with the exception language, he did not believe he had to do so before judgment. Evelyn also acknowledged that he received a $50,000 retainer, and that his fees would be less than the amount of funds in the retirement accounts but more than the retainer. Given the complexity of the issue—including the fact that garnishment was a complicating factor—this Court directed the Parties to file supplemental briefing.

In its supplemental brief, the Government argued that the retirement accounts should be entirely forfeited as untainted substitute assets to which the Government has "a ripened interest" after conviction and judgment. *Smith I*, ECF No. 52 at PageID.601. The Government noted that Smith's restitution judgment "means that by operation of law, a lien attaches to *all* of his property, including the Retirement Accounts." *Id.* at PageID.602. Accordingly, the Government argued that it had secured an interest in the retirement accounts that overrides Smith's rights to use these funds to pay for counsel, adding that "[t]here is no exception for attorney fees—Sixth Amendment or statutory—which allows Mr. Smith to escape the requirements of 21 U.S.C. § 852(p)." *Id.* at PageID.603–04. The Government "reject[ed] any suggestion that it ever agreed to use of these funds for attorney fees . . . . Instead, [it] has consistently made maximum recovery for the victims is first financial priority . . . and moved forthrightly to forfeit *all* of the Retirement Funds in its original Application for a forfeiture order." *Id.* at PageID.602 n.1.

Evelyn argued that judgment did not supersede the fact that this Court "specifically reserved the decision on whether any or all of Mr. Smith's retirement accounts . . . would be distributed to Mr. Smith's counsel to pay reasonable attorneys' fees." *Smith I*, ECF No. 51 at PageID.595. He contended that "the Government has failed to provide any authority to the contrary," *id.* at PageID.596, and that the authority it did cite "has no application to the issue before the Court as to trial counsel's fees from funds that were specifically reserved by the parties for possible distribution to trial counsel," *Smith I*, ECF No. 54 at PageID.619–20. Evelyn added that the history of the PI Freeze Order and stipulated preliminary order of forfeiture that was incorporated into the judgment demonstrate that "the Government has long agreed that restraining funds in this matter might be used to pay Mr. Smith's trial counsel of choice." *Id.* But notably, Evelyn cited no legal authority in defense of his position beyond this Court's Orders in *Smith I* and *Smith II*.

The Parties were simultaneously disputing whether the retirement accounts could be garnished. *See United States v. Smith*, No. 2:25-mc-50623 (E.D. Mich. 2025) ("*Smith Garnishment*"), ECF Nos. 7–8; 11; 13–16; 19–20. In May 2025, the Government secured writs of continuing garnishment for the two retirement accounts. *Smith Garnishment*, ECF Nos. 5; 6. But in August 2025,[3] Evelyn objected,

[3] Also in August 2025, the Government applied to amend the preliminary order of forfeiture for the purpose of clarifying asset descriptions, removing assets that would not be forfeited, substitute proceeds from forfeited assets, and add newly discovered

arguing that the funds were excepted from forfeiture by stipulation and therefore "no longer [the] property of the Judgment debtor himself (Mr. Smith) at the time garnishment was sought." *Smith Garnishment*, ECF No. 11 at PageID.79; *see also Smith Garnishment*, ECF No. 13.

**E. Hearing on Forfeiture, Garnishment, and Attorney's Fees**

On January 8, 2026, this Court held a hearing on the garnishment objections and forfeiture as related to the retirement accounts and attorney's fees. *See Smith Garnishment*, ECF No. 21.

The Government argued that it is entitled to all funds in the retirement accounts by either forfeiture or garnishment, noting that even if Evelyn retained a right to litigate attorney's fees, that extinguished upon entry of the restitution judgment, which provided the Government with a right to seize the accounts through garnishment. The Government also noted that the exception language set aside an argument to *seek* fees, but it did not set aside a specific amount of actual fees. In other words, the Government contended, the exception agreement carved out the opportunity for a process, not a specific award of necessary and reasonable fees. And since Evelyn had not been paid, he could not argue those funds were his. At bottom,

---

property for forfeiture. ECF No. 47. This Court granted the application and entered the first amended preliminary order of forfeiture with the same exemption language about the retirement funds still being disputed and not yet forfeited. ECF Nos. 49 at PageID.510, 590–92.

the Government argued that this Court no longer had discretion to award Evelyn attorney's fees because the retirement funds were now subject to forfeiture and garnishment.

Evelyn reiterated his position that there was no clear authority showing that the exception agreement would end at judgment, and that to hold otherwise would render meaningless the language carving out his right to seek attorney's fees in the PI Freeze Order, stipulated preliminary order of forfeiture, and judgment. When asked why he did not file a motion for attorney's fees before judgment, Evelyn admitted that he was overwhelmed with work but reiterated his belief that nothing suggested he would be unable to do so after judgment.

Following the hearing, the Government submitted a proposed second amended preliminary order of forfeiture that listed the retirement funds as fully forfeited, and Evelyn filed an objection raising the same arguments presented at the hearing. *Smith I*, ECF No. 58.

## II. FORFEITURE LAW

In 1996, Congress enacted the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, which made restitution mandatory for most serious federal offenses, such as racketeering, money laundering, and other forms of financial fraud. *See* 18 U.S.C. §§ 982; 1963. And in 2000, Congress amended 28 U.S.C. § 2461(c) to allow the Government to pursue civil and criminal forfeiture actions simultaneously in all

serious criminal prosecutions. *See United States v. Hampton*, 732 F.3d 687, 690 (6th Cir. 2013) ("The Government may seek criminal forfeiture for violation of any federal statute 'for which the civil or criminal forfeiture of property is authorized'" (quoting 28 U.S.C. § 2461(c))); *see also United States v. Bradley*, 969 F.3d 585 (6th Cir. 2020).

**A. Post-Guilty Plea Proceedings**

After a defendant pleads guilty and the court determines what property is subject to forfeiture, the court enters a preliminary order of forfeiture either specifically identifying forfeitable assets or generally identifying assets with a caveat that the order will later be amended under Criminal Rule 32.2(e)(1) with specific determinations. FED. R. CRIM. P. 32.2(b).

At sentencing, forfeiture becomes a mandatory part of a defendant's sentence. 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case."); *see Libretti v. United States*, 516 U.S. 29, 38–39 (1995) ("Forfeiture is an element of the sentence imposed *following* conviction or, as here, a plea of guilty."); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied."). Specifically, the preliminary order of forfeiture becomes final once the defendant is sentenced, and the order is

included by express reference in the judgment. *See* FED. R. CRIM. P. 32.2(b)(4); *see also McIntosh v. United States*, 601 U.S. 330, 333 (2024) ("[T]he failure to enter a preliminary order [of forfeiture] does not bar a judge from ordering forfeiture at sentencing subject to harmless-error principles on appellate review.").

Courts retain jurisdiction to amend the preliminary order of forfeiture in certain circumstances, including to add substitute property. FED. R. CRIM. P. 32.2(e); *see United States v. Carmen*, 933 F.3d 614, 616–17 (6th Cir. 2019) (holding that a court retains jurisdiction to enter forfeiture orders even after certain procedural deadlines, so long as defendant has not filed a notice of an appeal). A money judgment to collect proceeds from criminal activity is a mandatory part of the defendant's sentence, regardless of whether the defendant still has proceeds from his criminal activity. *See Hampton*, 732 F.3d at 691–92.

Once courts enter a judgment with forfeiture and mandatory restitution against a defendant at sentencing, the defendant's rights to the forfeited assets are extinguished and the Government's interest in the forfeited assets vests, allowing the Government to seize them—even from third parties like the defendant's bank. *See* 18 U.S.C. § 3613(c). To satisfy restitution, the Government can garnish any of the defendant's assets because a judgment ordering restitution initiates "a lien in favor of the United States on all property and rights to property of the" defendant. *Id.*

**B. Third-Party Ancillary Proceedings**

However, through post-judgment ancillary proceedings, third parties can bring claims alleging that the forfeited assets belong to them, not the defendant. *See* FED. R. CRIM. P. 32.2(c)(4); *see also United States v. Erpenbeck*, 682 F.3d 472, 480 (6th Cir. 2012). A third party must establish its standing to bring the ancillary claim. *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009); *see also United States v. Smith*, No. 3:08-cr-31, 2012 WL 1080477, at *2 (E.D. Ky. Mar. 30, 2012) ("To maintain a third-party claim in a criminal forfeiture proceeding, a claimant must establish [that] he or she has standing to do so."). Generally, a claimant has standing when she has a "facially colorable interest" in the seized asset. *United States v. $515,060.42 in Currency*, 152 F.3d 491, 498 (6th Cir. 1998).

For untainted assets, a third party can demonstrate standing by showing that she has "a legal right, title, or interest in the property" that vested in the third party "or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture." 21 U.S.C. § 853(n)(6)(A). If a third party establishes a right to ownership of the assets, the Government cannot seek to forfeit substitute assets from the third party-owner. 21 U.S.C. § 853(p)(2) (stating that "the court shall order the forfeiture of any other property *of the defendant*" as substitute assets, if needed) (emphasis added); *see also United States v. Coffman*, 574 F. App'x 541, 562–64 (6th Cir. 2014).

Thus, disputes over forfeited assets often boil down to a question of standing, asking who has a legally protected or vested interest in an asset, and if there are competing interests, whose interest is superior. *See United States v. Luis*, 578 U.S. 5, 16 (2016) ("The distinction [regarding competing interests] is thus an important one, not a technicality. It is the difference between what is yours and what is mine.").

## IV. DISCUSSION

The Parties do not dispute that the retirement funds are untainted substitute assets, that Evelyn received a $50,000 retainer not subject to forfeiture or garnishment, and that Smith had not transferred any other funds to Evelyn as attorney's fees. Beyond that, the Parties disagree on the procedural impact of this Court's judgment against Smith and whether Evelyn can seek to collect any portion of the retirement funds for attorney's fees thereafter.

The Government argues that despite the exception language about potential attorney's fees, the entry of judgment extinguished Smith's interest in his assets—including the retirement funds—and caused the Government's interest in the assets to vest. *Smith I*, ECF No. 52 at PageID.602. In this respect, the Government argues that all funds in the retirement accounts are now forfeited or otherwise subject to garnishment. *Id.* Evelyn essentially argues that the assets are not yet fully forfeited because otherwise, the exception language was pointless. *See Smith I*, ECF No. 51. This Court finds that regardless of whether the retirement funds were forfeited fully,

Evelyn has standing to seek attorney's fees from those funds within the limitations articulated below.

**A. Partial Forfeiture**

First, this Court finds that by the plain language of the preliminary order of forfeiture to which the Parties agreed and as incorporated into the judgment, the retirement funds were not fully forfeited.

"[A] court speaks through its orders and judgments, [so] the language in the judgment is controlling." *United States v. Penney*, 576 F.3d 297, 304 (6th Cir. 2009) (quoting parenthetically *Williams v. Brown*, 921 F.2d 277, at *1 (6th Cir. 1990) (per curiam) (table)). In the judgment, this Court ordered that the "[p]recise amount to be forfeited [in the retirement accounts was] to be finalized at a later date per Stipulated Preliminary Order of Forfeiture." *Smith I*, ECF No. 36 at PageID.406. Additionally, the preliminary order provided that it would "become final as to defendant at sentencing []*except* as to the Retirement Funds—for which this order becomes final as to a specific amount of funds only after the court's resolution of the attorney fee issue." *Smith I*, ECF No. 32 at PageID.266 (emphasis added). And the judgment specifically incorporated this Order. *Smith I*, ECF No. 36 at PageID.406.

Thus, this Court expressly established—and the Parties have expressly stipulated—that the retirement funds were not yet forfeited in full because a portion

may be owed to Evelyn.[4] The procedural act of entering judgment does not override the contents of that judgment, because to find "otherwise would elevate form over substance in determining the appropriateness of the directive issued here." *United States v. Green*, 532 F.3d 538, 554 (6th Cir. 2008). Therefore, in the absence of express authority prohibiting this Court from suspending forfeiture of specific assets post-judgment, this Court finds that the retirement funds were not yet fully forfeited. *Cf. Carmen*, 933 F.3d at 616–17.

Procedurally, this means that Smith retains a limited interest in the retirement funds solely for the purpose of transferring that interest to Evelyn upon a showing that Evelyn is entitled to reasonable attorney's fees. This Court will allow Evelyn to petition for attorney's fees as outlined below.

**B. Third-Party Standing**

Alternatively, even if this Court were to find that the retirement funds were fully forfeited such that Smith lacks any surviving interest in them that could be

---

[4] In fact, the Government concedes that this was the collective understanding when it stated the following in defense of a stipulated preliminary order of forfeiture that contained exception language:

> As to the retirement accounts, the stipulation is only a general order of forfeiture as contemplated by Rule 32.2(c), reserving final judgment as to the specific amount of the retirement funds to be forfeited pending the Court's decision on attorney fees. Notwithstanding this concession to scheduling issues, the Government is still seeking forfeiture of the retirement accounts in full.

*Smith I*, ECF No. 31 at PageID.244.

transferred to Evelyn, this Court finds that Evelyn has a legal interest in the retirement funds, which confers standing on him as a third-party claimant.

As stated, a defendant holds the superior interest in his untainted assets before a conviction or guilty plea. *Luis*, 578 U.S. at 12 (holding that untainted property "belongs to the defendant, pure and simple" and that the Government's interests are inferior to the defendant's right to counsel of choice); *see also Coffman*, 574 F. App'x at 563. The Government has a conviction-contingent interest in untainted assets it seeks to forfeit as substitute assets, but this interest is inferior to the defendant's interests under recognized constitutional rights. *Luis*, 587 U.S. at 8–9 (acknowledging the Government's interest in untainted assets but holding that they are inferior to the defendant's actual ownership).

However, after conviction, sentencing, and judgment, the defendant's interests in assets marked for forfeiture are extinguished. *United States v. Petlechkov*, 72 F.4th 699, 705 (6th Cir. 2023) (upon sentencing, "[t]he preliminary order of forfeiture [becomes final and] extinguishes the defendant's interest in the forfeited property"). Accordingly, the Government's interests in the assets are perfected unless a third party establishes a lawful interest. *See Luis*, 578 U.S. at 15–16 (exempting property from forfeiture "when a third party can show a vested interest in the property that is 'superior' to that of the Government"); *see also Erpenbeck*, 682 F.3d at 475 ("If anyone files a petition, the court must hold an ancillary hearing to determine the

bona fides of his alleged interest. If no one files a petition within the statutory time frame, clear title vests in the United States, extinguishing all other parties' interests in the property") (internal quotation marks and citation omitted).

Again, a third party has standing to claim assets subject to forfeiture proceedings by demonstrating a "facially colorable interest" in the assets. *$515,060.42 in Currency*, 152 F.3d at 498; *see also United State v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015) (holding that a third-party claimant "must first establish his standing to challenge the forfeiture order by demonstrating a 'legal interest' in the forfeited property") (quoting 21 U.S.C. § 853(n)(2)); *United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012) (holding that "the touchstone for standing is the possession of a legal interest in the forfeited property"). "Colorable claims which confer standing include the most obvious type of interest in seized property, an ownership interest." *$515,060.42 in Currency*, 152 F.3d at 498.

"A property interest less than ownership," such as a contractual or possessory interest, may also sufficiently "bestow standing on a claimant to contest a forfeiture." *Id.* "Generally, [courts] look to 'the law of the jurisdiction that created the property right to determine the petitioner's legal interest.'" *United States v. Real Prop. Located at 4527-4535 Mich. Ave., Detroit, Mich.*, 489 F. App'x 855, 857 (6th Cir. 2012) (quoting *Salti*, 579 F.3d at 668). Notably, standing in this context requires the claimant to allege only "a personal stake in the outcome of the controversy, i.e., an

actual or threatened injury" with sufficient proof of such property interest. *$515,060.42 in Currency*, 152 F.3d at 499.

Here, Evelyn has a "facially colorable interest" by way of his Retainer Agreement with Smith. A contract can form a basis for establishing a legal interest in forfeited property. *See, e.g.*, *United States v. Real Prop., All Furnishings Known As Bridwell's Grocery*, 195 F.3d 819, 822 (6th Cir. 1999) (holding that a third party had standing by asserting a property interest in a grocery store through a land installment contract). And under Michigan law, an attorney has a legal interest in fees for services rendered that were agreed to through attorney-client agreements, which are contracts.[5] *See, e.g.*, *Wasenko v. Auto Club Grp.*, 16 N.W.3d 557, 559 (Mich. Ct. App. 2023) (observing that a retainer or "fee agreement between an attorney and a client is a contract . . . subject to the law of contracts") (internal quotation marks and citations omitted); *Souden v. Souden*, 844 N.W.2d 151, 158

[5] In addition, courts in this circuit have recognized that attorneys have a legal interest in fees established by contractual agreements. *See, e.g.*, *In re Appalachian Star Ventures, Inc.*, 341 B.R. 222, 227 (E.D. Tenn. 2006) (acknowledging "a lawyer's right to compensation . . . based on contract" (citation omitted)); *In re Doors & More, Inc.*, 127 B.R. 1001, 1002–04 (E.D. Mich. 1991) (distinguishing a client's continued "interest in a retainer fee paid to an attorney" from the attorney's right to collect fees from the retainer that are earned); *In re Saroff*, 509 B.R. 166, 172–73 (E.D. Tenn. 2014) (noting an attorney's right to "just and adequate compensation for services rendered" based on the contractual agreement (citation omitted)); *Ward v. Sun Valley Foods Co., Inc.*, 212 F. App'x 386, 391 (6th Cir. 2006) (acknowledging that an attorney's right to collect fees for legal services is an interest that can be extinguished through other agreements).

(Mich. Ct. App. 2013) ( "An attorney is entitled to recover fees for services rendered under the agreement," which is a contract).

Thus, for the purposes of forfeiture, the Retainer Agreement is a contract that established Smith's agreement to transfer his interest in his untainted assets to Evelyn upon receipt of legal services. Specifically, Smith agreed to pay Evelyn a $50,000 retainer for services rendered during Smith's criminal investigation proceedings, and to pay Evelyn at a $400 hourly rate.[6] *Smith I*, ECF No. 71 at PageID.675. This contract created Evelyn's interest in Smith's untainted assets that vested upon rendering legal services, which establishes "a stake in the outcome of the controversy." *See $515,060.42 in Currency*, 152 F.3d at 498; *see also Souden*, 844 N.W.2d at 158; 21 U.S.C. § 853(n)(6)(A).

However, the Retainer Agreement is explicitly limited to compensation for services *during Smith's investigation*, and that if Smith was charged, Smith and Evelyn would enter into a new agreement. *Smith I*, ECF No. 71 at PageID.675. At a status conference on August 4, 2026, *see Smith I*, ECF No. 67, Evelyn not only confirmed that the Retainer Agreement was only for services performed before Smith was charged, but also conceded that he did not create a new written agreement with Smith for continued representation despite continuing to represent Smith.

[6] As stated, Higbee and Smith did not have any written agreement contemplating attorney's fees. Therefore, this Court finds that Higbee has no legally recognizable interest in compensation from the retirement funds.

Indeed, Evelyn acknowledged that the Retainer Agreement is the only signed agreement contemplating attorney's fees. Thus, Evelyn has a legal interest in Smith's retirement funds to cover reasonable attorney's fees only for services rendered before Smith was charged on September 24, 2024. *See Smith I*, ECF No. 14. And given that Evelyn has already received a $50,000 retainer, he may not be owed any additional fees from the retirement funds if his fees between April 24, 2024, and September 24, 2024, do not exceed that retainer. Accordingly, this Court finds that Evelyn has standing to seek attorney's fees, but not that he is necessarily owed any portion of the funds.

**C. Garnishment**

The Government also contends that even if the retirement funds are not yet forfeited, they are subject to garnishment because the restitution judgment triggered the Government's lien on all of Smith's assets. *Smith I*, ECF No. 52 at PageID.602. True, under garnishment law, a judgment with a restitution order establishes the Government's interest via a lien on all the defendant's property. 18 U.S.C. § 3613(c). But garnishment pertains only to the *defendant's* assets. 21 U.S.C. § 853(p)(2); *Coffman*, 574 F. App'x at 562–64. Here, the Retainer Agreement established that Smith would transfer his interest in a portion of those funds to Evelyn upon receipt of legal services. *See Smith I*, ECF No. 71. Thus, because the Government's lien only applies to *Smith's* assets, and this Court has found that some of those assets may

belong to Evelyn, the retirement funds are not yet irrevocably subject to garnishment. *See generally* 18 U.S.C. § 3613(c) (noting that the lien can be terminated, "remitted, [or] set aside" in certain circumstances).

To find otherwise would undermine the purpose of objections to garnishment and of third-party ancillary proceedings. Recall that third parties may contest and secure quiet title to property identified as a defendant's untainted asset after judgments with forfeiture and restitution are entered. In that case, garnishment of those assets can be objected to, and garnishment is effectively suspended until the ancillary proceedings conclude and ownership is settled. *See generally* 28 U.S.C. § 3205(c)(5). And upon a finding that the asset is the third party's, the lien does not apply because the lien only attaches to the defendant's assets. *See* 18 U.S.C. § 3613(c).

Here, this Court's order and judgment—by stipulation of the Parties—has suspended forfeiture based on Evelyn's right to argue for some of the retirement funds. It follows that the suspension also applies to garnishment over whatever portion of the assets are determined to be Evelyn's, not Smith's. And even if forfeiture were fully realized, a successful third-party claim to a garnished asset is a viable avenue for Evelyn to seek fees from the retirement accounts post-judgment.

At bottom, judgment is, as the Government contends, a crucial procedural switch that flips interest in untainted assets from the defendant to the Government.

But not in such a way as to prevent an individual with a legal interest in the assets from bringing a claim. In this sense, before judgment, this matter was akin to a standard attorney's fee issue in criminal forfeiture proceedings. Post-judgment, the issue has been brought into the realm of a third-party ancillary claim. Having found that Evelyn has standing to assert his interest in the retirement funds, this Court will allow Evelyn to file a petition for attorney's fees from the retirement funds, and the Court will determine whether the fees are reasonable. But as stated, Evelyn can only seek fees for services rendered between April 24, 2024, and September 24, 2024, and he must show that he is owed fees beyond the $50,000 retainer already received.[7]

## V. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's counsel, Gerald K. Evelyn, is **DIRECTED** to file a petition **on or before September 30, 2026,** in **Case Nos. 2:25-mc-50559 and 2:24-cr-20532,** for any outstanding attorney's fees for services rendered between April 24, 2024, and September 24, 2024, not covered by the $50,000 retainer. If Evelyn is not owed any remainder from the services rendered within the confines of these terms, then he is directed to work with the Government

[7] As Evelyn concedes, he did not comply with his own Retainer Agreement because he did not periodically bill Smith, nor did he enter a new agreement for continued representation after Smith was charged. This means Evelyn is not entitled to seek attorney's fees for post-indictment services. Indeed, "[a]n attorney who ventures into a criminal case without a full understanding of [forfeiture laws] is asking for what could prove to be a very expensive lesson." Mark C. Hansen, *Taking Fees: A Primer on Attorneys' Fee Forfeitures*, 10 No. 2 LITIG. 17, 18 (1993).

to file a stipulation to that effect or a stipulated, amended preliminary order of forfeiture resolving the statuses of the retirement accounts.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 11, 2026